Filed 9/23/25  P. v. Gardiner CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B336024 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA347305) |
| v. | |
| DAVID GARDINER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Renee Korn, Judge.  Affirmed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant David Gardiner (appellant) appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6 (former § 1170.95)[1] following an evidentiary hearing. Because substantial evidence supports the court's finding, beyond a reasonable doubt, that appellant was a major participant in the underlying felony who acted with reckless indifference to human life, we affirm.

## BACKGROUND

I. *Facts*[2]

The La Brea Collective (dispensary) was a medical marijuana dispensary. The exterior metal door was locked during business hours. To gain entry, a patron would ring the doorbell and, through a slot in the metal door, hand a security guard his or her identification and doctor's recommendation. The security guard would then walk the patron into a "mantrap" between the exterior metal door and an interior door leading to the lobby of the dispensary. Security cameras monitored the premises.

On October 1, 2008, owner Daniel Sosa (Sosa), bartenders

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no substantive change. (Stats. 2022, ch. 58, § 10.) For simplicity, we refer to the section by its new numbering.

[2] The facts summarized in this section are drawn from the evidence presented at the section 1172.6, subdivision (d)(3) evidentiary hearing.

Martin Chavero (Chavero) and "Matthew," and security guard Noe Gonzalez (Gonzalez) were working at the dispensary. At approximately 3:30 p.m., the doorbell rang. Sosa ran towards the back of the dispensary. On a security monitor, Chavero saw two men—appellant and Brandon Daniels (Daniels)—each pointing a gun at Gonzalez's head. Gonzalez said, "trucha," meaning "heads up" in Spanish. Another man, Leon Banks (Banks), kicked the door open and ran into the dispensary, carrying a gun.

Chavero ran into the back office and locked the safe. Feeling someone grab his shoulder, Chavero turned around and saw Banks pointing a gun at his face. Banks said, "Don't look at me. I'm going to kill you." Banks walked Chavero to the front of the dispensary, threw him on the ground, and started to restrain him with zip ties.

Meanwhile, appellant had been left alone with Gonzalez. The men engaged in a "tussle[]" outside the dispensary, during which appellant's gun discharged. Appellant ran back inside the dispensary, where Banks and Daniels had remained.

Hearing the gunshot, Banks said, "We got to go. We got to go." Daniels, who had been upstairs, ran downstairs and both Banks and Daniels continued towards the front of the dispensary.

From the outside, Gonzalez held the dispensary's metal door closed to prevent the appellant, Banks, and Daniels from escaping. Shots were fired from inside the dispensary through the slot in the metal door. Banks shot through the glass near the door, hitting Gonzalez. The men pushed the door open and fled. Gonzalez died as a result of multiple gunshot wounds.

Appellant was arrested on July 27, 2009, and interviewed at the police station. When asked what had happened, appellant responded: "I don't know, I guess it just, it just started off as a

robbery.  We'd go in there to get some weed I guess and just leave, that's all it was."  Appellant admitted that the robbery was "planned[,]" but claimed that he did not "know nothing about nothing really[.]"  When he fled the scene, appellant "was scared" that Gonzalez would die.  Appellant described the incident as "just a robbery gone bad."  DNA collected from zip ties found inside the dispensary and a glove found on the nearby sidewalk matched appellant's DNA profile.

## II.  *Conviction*

On April 15, 2013, appellant pleaded no contest to the first degree murder of Gonzalez (§ 187, subd. (a)) and admitted that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c) & (e)(1)).  On April 30, 2013, the trial court sentenced appellant to an aggregate term of 45 years to life in state prison.

## III.  *Section 1172.6 Proceedings*

On March 25, 2019, appellant filed a petition for resentencing pursuant to section 1172.6.  (*People v. Gardiner* (Aug. 24, 2021, B303948) [nonpub. opn.], 2021 WL 3732184, at p. *2.)  The trial court denied the petition without holding an evidentiary hearing, and appellant appealed.  (*Id*. at pp. *1–*2.)  Concluding that the record of conviction did not establish that appellant was ineligible for relief as a matter of law, this court reversed.  (*Id*. at p.*4.)

On remand, the trial court held an evidentiary hearing pursuant to section 1172.6, subdivision (d), during which the People called six witnesses and appellant called one witness.  On November 29, 2023, the court denied the petition.  The court found, beyond a reasonable doubt, that appellant was a major participant in the attempted robbery who acted with reckless

4

indifference to human life.  The court rejected the notion that the crime was "just a garden-variety armed robbery" and found appellant's statements while in custody to be "certainly self-serving and in part unbelievable."

Appellant filed a timely notice of appeal.

## DISCUSSION

I. *Background Legal Principles*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) substantively amended sections 188 and 189 to "eliminate[] natural and probable consequences liability for murder as it applies to aiding and abetting[] and limit[] the scope of the felony-murder rule.  [Citations.]"  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  Under the amended statutes, "[a] felony-murder conviction may no longer rest on the mere commission of and intent to commit an underlying felony." (*People v. Emanuel* (2025) 17 Cal.5th 867, 875 (*Emanuel*).)  Now, "[a] person who did not kill or act with the intent to kill can be liable for murder under the felony-murder doctrine only if he or she 'was a major participant in the underlying felony and acted with reckless indifference to human life . . . .' " (*Id.* at p. 880.)

Senate Bill No. 1437 also added what is now section 1172.6, which provides a procedural mechanism for defendants who could not be convicted of murder under the amended laws to petition for retroactive relief.  (*Lewis, supra,* 11 Cal.5th at p. 959.)  Upon the filing of a properly pleaded petition for resentencing, the trial court must conduct a prima facie analysis to determine the defendant's eligibility for relief.  (§ 1172.6, subds. (b)(3) & (c); *People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis*, at pp. 957, 960.)  If the court determines that the requisite prima facie

showing has been made, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c); *People v. Wilson* (2023) 14 Cal.5th 839, 869.)

"At the evidentiary hearing following issuance of an order to show cause, the superior court acts as an independent fact finder, and the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder . . . under California law following Senate Bill No. 1437's amendments. [Citations.] The petitioner and the prosecutor may offer new or additional evidence, and the court may consider evidence 'previously admitted at any prior hearing or trial that is admissible under current law,' including witness testimony. [Citations.]" (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1065–1066.)

II. *Standard of Review*

On appeal from the denial of a section 1172.6 petition following an evidentiary hearing, we review the trial court's findings for substantial evidence. (*Emanuel*, *supra*, 17 Cal.5th at p. 885.) "Under this standard, 'we review the record " ' "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact" ' " ' could find beyond a reasonable doubt that [appellant] acted with reckless indifference. [Citation.]" (*Ibid.*)

III. *Substantial Evidence Supports the Trial Court's Findings*

Substantial evidence supports the trial court's findings, beyond a reasonable doubt, that appellant was a major participant in the attempted robbery and that he acted with reckless indifference to human life.

A. Major participant

In *People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*), the California Supreme Court identified the following factors that "may be weighed in determining the ultimate question, whether [a] defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]:" (1) the defendant's role "in planning the criminal enterprise that led to one or more deaths;" (2) his role "in supplying or using lethal weapons;" (3) his awareness "of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants;" (4) his presence "at the scene of the killing" and thus whether he was "in a position to facilitate or prevent the actual murder;" and (5) his actions after the use of lethal force. "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid*.)

1. *Planning*

Appellant admitted that he was aware of the plan to rob the dispensary. Appellant's coordinated efforts with his confederates, his possession and use of a firearm, and the presence of his DNA on zip ties and a glove found at the scene further indicate that he was involved in the planning and intended to subdue the dispensary's employees with force or threat of force. (See *In re White* (2018) 21 Cal.App.5th 18, 30, affd. (2020) 9 Cal.5th 455 [substantial evidence may consist of inferences if they are the product of logic and reason and rest on the evidence].)

2. *Supplying or using lethal weapons*

While no evidence was introduced that appellant supplied the firearms used by the group, he "was not a mere bystander

7

when it came to the deadly weapons used during the [attempted] robbery." (*In re Harper* (2022) 76 Cal.App.5th 450, 461 (*Harper*); see also *In re McDowell* (2020) 55 Cal.App.5th 999, 1011 [even in the absence of evidence that the defendant supplied the murder weapon, the fact that he "was himself armed with, and brandished, a deadly or dangerous weapon" weighed in favor of major participant finding].) Appellant entered the dispensary armed and used his loaded gun to subdue Gonzalez, the dispensary's security guard, by pointing the lethal weapon directly at his head. Appellant also engaged in a physical altercation with Gonzalez, during which appellant's firearm discharged.

### 3. *Awareness of dangers posed by the crime*

At the outset of the attempted robbery, appellant knew that he, Daniels, and Banks were all armed. (See *People v. Montanez* (2023) 91 Cal.App.5th 245, 281 ["Because [the defendant] was present at the scene and in close proximity to his cohorts, a fact finder could reasonably infer he was aware of both weapons"].) Appellant pointed his loaded gun directly at the head of the eventual murder victim, while Daniels did the same. Appellant would have become increasingly aware of the dangers posed by the attempted robbery when Gonzalez subsequently fought back and appellant's gun discharged. (See *Harper*, *supra*, 76 Cal.App.5th at p. 461 [the defendant "was clearly aware of the risk of death once the robbery was underway" based, in part, on the victim struggling].)

### 4. *Proximity to the killing*

Appellant was present at the time of the fatal shooting of Gonzalez. He failed to do anything to restrain his accomplices and instead actively facilitated the murder. As Gonzalez held the

8

dispensary's metal door closed to prevent the men from escaping, appellant and his companions worked together to push the door open. During this collective effort, Banks shot Gonzalez.

### 5. *Actions after the killing*

In his post-arrest interview, appellant stated that he had been "scared" that Gonzalez would die. The reasonable inference is that appellant knew Gonzalez had been gravely wounded but was not yet deceased. Despite this knowledge, appellant failed to render any aid and instead fled.

### 6. *Totality of the circumstances*

Viewed together, this substantial evidence amply supports the finding that appellant was a major participant in the attempted robbery, including in the particularly violent aspects of the crime.

### B. Reckless indifference to human life

A defendant acts with reckless indifference to human life when he " ' "knowingly engag[es] in criminal activities known to carry a grave risk of death." ' [Citations.]" (*Banks*, *supra*, 61 Cal.4th at p. 801.) "[R]eckless indifference to human life 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' [Citation.]" (*Emanuel*, *supra*, 17 Cal.5th at p. 883.)

In *People v. Clark* (2016) 63 Cal.4th 522, 618–623 (*Clark*), the California Supreme Court set forth a nonexhaustive list of considerations relevant to determining whether a defendant acted with reckless indifference to human life, " 'including use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any threat

9

the confederates might represent, and efforts taken to minimize risks.' [Citations.]" (*Emanuel*, *supra*, 17 Cal.5th at pp. 884–885.) A defendant's youth may also be a relevant factor. (See *id.* at p. 885, fn. 6.) Each of these considerations is neither necessary nor sufficient to a finding of reckless indifference. (*Id.* at p. 885.)

### 1. *Use or awareness of weapons*

Appellant was personally armed and knew that his two accomplices were also armed. (See *People v. Bradley* (2021) 65 Cal.App.5th 1022, 1033 [evidence that defendants themselves possessed firearms and were aware that their accomplice was also armed supported reckless indifference finding].) Appellant thus knew that his confederates represented a deadly threat to any occupant of the dispensary, particularly its security guard.

### 2. *Presence at the crime; opportunity to intervene*

Appellant was present when Gonzalez was fatally shot yet failed to intervene to prevent it or to render subsequent aid. (See *Clark*, *supra*, 63 Cal.4th at p. 619 [underscoring the particular significance of proximity to the murder].)

### 3. *Duration of the crime*

The crime was of sufficient length to allow the assailants to overcome the dispensary's security measures, for appellant to engage in a struggle with Gonzalez outside the dispensary during which appellant's gun discharged, for appellant to reenter the dispensary, and for a deadly struggle to occur as appellant and his associates attempted to escape. Even if this sequence of events occurred rapidly, the crime was violent throughout its duration, increasing the risk that it would culminate in murder.

### 4. *Efforts to minimize risk*

Appellant's actions increased rather than minimized the risk of violence. Appellant was armed and knew that his two

accomplices were also armed.  Together, the three men attempted to rob a marijuana dispensary with a dedicated security guard in the middle of the afternoon, when it was foreseeable that patients and numerous employees would be present.  (See *McDowell*, *supra*, 55 Cal.App.5th at p. 1013 ["it was foreseeable that customers or others could be present [at home invasion robbery of a drug dealer], even early in the morning, and that either the dealer himself or his customers might be armed or high and thus more likely to resist"].)

From the outset of the crime, appellant was "willingly involved in the violent manner in which the [attempted] robbery took place."  (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1089.)  He pointed his loaded gun at Gonzalez's head to effectuate his compliance.  Following a struggle with Gonzalez outside of the dispensary, appellant's gun discharged.  Rather than running away, appellant reentered the dispensary to continue assisting his accomplices with a robbery in which the grave risk of death was readily apparent.

5. *Appellant's age*

Appellant was almost 21 years old when the crime occurred.  Although his youth may have contributed to increased impulsivity, an expert witness testified at the evidentiary hearing that she would expect a person around 20 or 21 years old to understand that a gun could kill someone and to appreciate the risk posed by holding a gun to a person's head.

6. *Totality of the circumstances*

Each of the factors discussed above supports the finding that appellant acted with reckless indifference to human life.

11

**DISPOSITION**

The order denying appellant's section 1172.6 petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

GOORVITCH, J.[*]

We concur:

LUI, P. J.

CHAVEZ, J.

---

[*] Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.